IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARK MOSS,

    PLAINTIFF,

VS.                                                    CV NO.:

BIRMINGHAM JEFFERSON
COUNTY TRANSIT AUTHORITY,

    DEFENDANT.                         JURY TRIAL DEMANDED

## COMPLAINT

### I. JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201 and 2202 and pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. District Court jurisdiction exists pursuant to 29 U.S.C. §§ 216(b) and 217 and 28 U.S.C. § 1331. The jurisdiction of this Court is invoked to secure the protection and redress the deprivation of rights secured by the FLSA.

### II. PARTIES

2. Plaintiff, Mark Moss, (hereinafter "Plaintiff") at all times relevant to this Complaint was a resident of Birmingham, Jefferson County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Plaintiff was an employee within the

contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Southern Division.

3. Defendant Birmingham Jefferson County Transit Authority ("Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is engaged in commerce from the production of goods as contemplated by 29 U.S.C. §§ 203(r), 203(s). Therefore, this Court has jurisdiction over Defendant.

### III. STATEMENT OF FACTS

4. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-3 above.

5. Defendant hired Plaintiff on or about June 10, 2019.

6. Defendant employed Plaintiff as a Systems Administrator.

7. At all times during the employment relationship, Defendant incorrectly classified Plaintiff as a salary paid, exempt employee.

8. Defendant initially paid Plaintiff a salary of $2,500.00 every two weeks.

9. Defendant did not maintain time records of Plaintiff's hours worked.

10. Plaintiff spent the vast majority of his time worked performing non-exempt labor for Defendant.

11. Throughout Plaintiff's employment, his primary duties consisted of answering Defendant's IT Help Line, troubleshooting individual hardware & software issues, and repairing broken equipment.

12. When troubleshooting or repairing issues within Defendant's system, Plaintiff relied on Defendant's established procedures.

13. During the three years preceding the filing of this Complaint, Plaintiff typically worked over forty hours in a work week.

14. Defendant scheduled Plaintiff to work Monday through Friday from 8:00 a.m. through 5:00 p.m.; however, Defendant's operating hours, on a daily basis, began at 4:30 a.m. and ended at 11:00 p.m. (including Saturday and Sunday).

15. During June 2020, Defendant increased Plaintiff's salary to $2,700.00 every two weeks as part of a companywide increase.

16. Shortly after this salary increase, Defendant experienced personnel changes within its IT Department, which reduced its staff from four employees, including Plaintiff, to Plaintiff and an Application Specialist.

17. With this reduction in staff, Defendant required Plaintiff to assume the duties and responsibilities of the former employees, including acting as Defendant's first responder to its "IT Help Line" to address matters such as changing passwords or adding printers.

18. As first responder to Defendant's "IT Help Line", Defendant required Plaintiff work "on call" answering its "IT Help Line" each night, weekend, and holiday.

19. Plaintiff responded to calls submitted by Defendant's employees to its IT Help Line during all of Defendant's operating hours from 4:30 a.m. through 11:00 p.m.

20. Plaintiff spent the vast majority of his time worked performing repetitive and routine work.

21. Plaintiff reported directly to Defendant's Chief Information Officer.

22. Defendant employed Anita Griffith as its interim Chief Information Officer.

23. Beginning in January 2020, Plaintiff questioned Griffith about receiving overtime pay for the additional hours Defendant required Plaintiff to work.

24. Defendant employed Justin Ridgeway as its interim Human Resources Director.

25. After speaking with Griffith a number of times about the failure to pay overtime compensation, Plaintiff questioned Ridgeway about receiving overtime pay for the additional hours Defendant required Plaintiff to work.

26. Griffith and Ridgeway told Plaintiff that he was an exempt employee and ineligible to receive overtime pay.

27. During June 2020, Ridgeway told Plaintiff that in lieu of overtime pay Defendant would raise Plaintiff's pay to compensate for the additional work caused by personnel changes.

28. Plaintiff signed paperwork with Ridgeway and Griffith approving the raise.

29. Defendant did not issue Plaintiff a raise.

30. Defendant later selected Jerry Walker as its permanent Human Resources Director.

31. When Plaintiff complained to Walker regarding overtime, Walker also informed Plaintiff that he was an exempt employee and ineligible to receive overtime pay.

32. Plaintiff was not free from supervision.

33. Defendant's Chief Information Officer assigned Plaintiff tasks such as working with an outside vendor to make installations or replacements to Defendant's system as the need arose.

34. Defendant's Chief Information Officer closely monitored and engaged with Plaintiff's activity responding to Defendant's IT Help Line.

35. Defendant's Chief Information Officer frequently assigned Plaintiff standard help desk issues to resolve.

36. Plaintiff did not have the authority to formulate, affect, interpret, or implement management policies or operating practices.

37. Plaintiff did not carry out major assignments in conducting the operations of the business.

38. Plaintiff did not perform work that affected business operations to a substantial degree without prior approval from Defendant's Chief Information Officer.

39. Plaintiff did not have the authority to commit the employer in matters that had significant financial impact without prior approval from Defendant's Chief Information Officer.

40. Plaintiff did not have the authority to waive or deviate from established policies and procedures without prior approval from Defendant's Chief Information Officer.

41. Plaintiff did not have the authority to negotiate and bind the company on significant matters.

42. Plaintiff did not provide consultation or expert advice to management.

43. Plaintiff was not involved in planning long- or short-term business objectives.

44. Plaintiff did not investigate or resolve matters of significance on behalf of management.

45. Plaintiff did not represent the company in handling complaints, arbitrating disputes or resolving grievances.

46. Plaintiff continued to complain about Defendant's failure to properly compensate him for all hours worked in excess of forty the duration of his employment.

47. On October 11, 2021, Defendant terminated Plaintiff's employment.

48. Defendant did not provide Plaintiff a reason for his termination.

### IV.   COUNT ONE – FLSA – Overtime Violations/ Misclassification

49. Plaintiffs hereby incorporate by reference each of the allegations contained in paragraphs 1-49 above.

50. During the three years preceding the filing of this Complaint, Defendant is an enterprise engaged in commerce or the production of goods in commerce as defined by 29 U.S.C. § 203(s)(1).

51. During the three years preceding the filing of this Complaint, Defendant has been a company wherein two or more employees, including the Plaintiff, whose employees handle and/or work on goods that have been moved in and/or produced in commerce.

52. Defendant's gross annual volume of revenue, on a rolling quarterly basis, exceeds $500,000 for the fiscal years ending in 2018, 2019, 2020, and 2021.

53. At all times relevant to this action, Defendant was an employer of Plaintiff as defined by 29 U.S.C. § 203(d).

54. During the three years preceding the filing of this Complaint, Plaintiff, was an employee of Defendant as defined by 29 U.S.C. § 203(e)(1).

55. During the three years preceding the filing of this Complaint, Plaintiff worked hours in excess of forty hours for a work week on at least one or more occasion.

56. Defendant initially paid Plaintiff a salary of $2,500.00 every two weeks.

57. Defendant later paid Plaintiff a salary of $2,700.00 every two weeks.

58. Defendant failed to pay Plaintiff overtime premium for hours worked in excess of forty in a work week.

59. As the result of Defendant's willful and intentional violation of the FLSA, Plaintiff has been damaged, suffering loss of overtime pay.

V.   **COUNT TWO - FLSA RETALIATION - TERMINATION**

60. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 59 above.

61. During the three years preceding the filing of this Complaint, Plaintiff worked hours in excess of forty hours for a work week on at least one or more occasion.

62. Defendant failed to pay Plaintiff overtime premium for hours worked in excess of forty in a work week.

63. From 2020 through early October 2021, Plaintiff repeatedly complained to Griffith and Ridgeway about not receiving overtime compensation.

64. On October 11, 2021, Defendant terminated Plaintiff's employment.

65. Defendant did not provide Plaintiff a reason for its termination decision.

66. Defendant retaliated against Plaintiff by terminating his employment because he opposed Defendant's failure to provide him overtime compensation for hours worked in excess of forty during a workweek.

67. Defendant's actions in terminating Plaintiff violated the FLSA's anti-retaliation statute. (29 U.S.C. § 215(a)(3)).

68. Because of Defendant's willful and intentional violation of the FLSA, Plaintiff has suffered loss of pay, benefits, and other compensatory damages.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

A. The Court issue proper process to compel Defendant to answer or otherwise plead to the allegations contained in the Complaint;

B. This Court award Plaintiff the amount of his unpaid overtime pay, unpaid overtime premium, unpaid minimum wages, liquidated damages equal to the amount of all unpaid wages; nominal damages; and special damages;

  C. Award him back pay, together with employment benefits, front pay, compensatory damages and/or liquidated damages equal to his back pay; special damages; nominal damages;

  D. That Plaintiff be granted judgment against Defendant for all reasonable attorneys' fees, costs, disbursements and interest; and

  E. For such other and further relief as this Court deems equitable, proper and just.

_/s/ Allen D. Arnold_
Allen D. Arnold

_/s/ Whitney Morgan Brown_
Whitney Morgan Brown

**OF COUNSEL:**
Allen D. Arnold, LLC
6 Office Park Circle, Suite 209
Mountain Brook, AL 35223

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

_/s/ Allen D. Arnold_
OF COUNSEL

**DEFENDANT(S) ADDRESS(ES):**
Birmingham Jefferson County Transit Authority
1801 Morris Avenue
Birmingham, AL 35203